Agenda number 2, number 1, 2, 5, 7, 8, 5, Board of Education of the City of Chicago et al. v. Daphne Moore. Mr. Doyle, please proceed. Good morning. May it please the Court. I'm Thomas Doyle for the Board of Education of the City of Chicago. As this case has been briefed, it is largely a pure legal issue. The facts are largely not in dispute. That is, there is no manifest way to the evidence argument, and there is no evidence or there is no argument about whether the evidence suggests that a 90-day suspension was a proportional response here. Instead, this case focuses on the power of a school board in these circumstances. And as the briefing has developed, there are two closely related questions. The first question is, when a school board initiates a teacher dismissal proceeding, does the school board retain the ability to suspend a teacher in lieu of dismissal? The second related question is, if a school board suspends a teacher, can the school board issue that suspension on a time-served basis in the same order in which it reinstates the teacher with back pay? Let me look at that first question first, if I could. The question about whether a school board retains the ability to issue a suspension when teacher dismissal proceedings begin. The opposition brief seems to agree with us on that position, that at least on a going-forward basis, a school board does have authority to issue a suspension. In other words, a school board could have said, you may return to work and serve a 90-day suspension and then begin teaching again. I say that because at page 19 of the opposition brief, they talk about 3485, the section that's at issue here. Does not limit a school board's general ability to issue a suspension. And their position seems to be that 3485 only limits a school board's ability to impose a retroactive suspension, a time-served suspension. That, of course, is consistent with what Spinelli would teach us. In this Court, Spinelli, the Spinelli holding tells us that the power to suspend is separate from the power to dismiss. They arise from different sources of authority for a school board. For the City of Chicago, the relevant section is Article 34 of the school code. And 3485 is where we find the dismissal proceedings. Spinelli would tell us that it is the board's requisite and proper powers under 3418 that enable a school board to issue a suspension. So dismissal and suspension arise from separate sections. In that sense, then, limitations in Section 3485 on the dismissal proceeding do not necessarily limit the board's ability to suspend or the circumstances in which the board may suspend. That — So this is more than a statutory interpretation question? It is statutory in the sense that how do you read 3418 and Spinelli alongside 3485? That seems to be the statutory issue. 3485, we argue, deals only with dismissal. What's the significance, if any, of the fact the board proceeded under 3485? Your Honor, that — we proceeded under that because there is an entire procedure for that. There is a hearing officer appointed, and the parties go through the pre-hearing process, and a hearing happens, and the hearing officer offers a finding of fact and offers recommendations on whether the teacher should be dismissed. So it wasn't required or necessary for the board to indicate in any way in the initial action that there could be other grounds or other issues? It's not required, Your Honor. And the reason it's not required is because we always have that power. We would have that power if we had never begun a 3485 proceeding. So the initial charging document does not have to tee up suspension as a possible remedy. The two of them are different sources of authority under the school code. Now, that makes sense given one of the other things that we know on this record. The board did other things other than just suspend or dismiss. For example, there is a warning resolution that happens in that October 24th decision. There is a remediation requirement that happens in there. The appellate court erred when it found that 3485 is an all-or-nothing path, as the appellate court called it. It is a binary choice, the appellate court suggested, that once 3485 begins, the only thing a school board may do, the appellate court suggests, is either dismiss or reinstate with full back pay. That isn't consistent with what happened here. That isn't consistent with what the parties seem to agree, at least as to the warning resolution and to the remediation and to the ability to suspend going forward. The appellate court read the statute wrong when it came to the conclusion that this was an all-or-nothing or a binary choice proposition as soon as 3485 begins. There's a sensible reason to do it this way also. If school boards were boxed into an all-or-nothing kind of procedure, they would end up over-prosecuting some cases and under-prosecuting others. If there is a range of responses available to a school board, justice can be done better at the agency level. Instead of, if the agency is boxed only into, you must dismiss or reinstate with full back pay. Your Honors, that first question, the pure legal question, does the board retain the ability to issue a suspension, it seems to me, on this record, can clearly be answered yes. The board does have that ability. The second question is, can that suspension occur in the same order that reinstates a teacher with back pay and the sentence or the suspension be fashioned on a time-served basis? That question, I believe, also is yes, a board does have the ability to issue a retroactive or time-served suspension. This Court recognized in Lake County that an agency may carry out two of its decisions in the same order. An agency may exercise two powers in the same order. The suspension, then, happens after the board has already fully complied with 3485. In other words, the board reinstates the teacher with back pay, satisfies the must requirement under 3485 that is the centerpiece to the opposition brief, satisfies that, and then imposes an offset. That's how the October 24th decision reads. It says the 90-day suspension is a deduction from back pay. In other words, yes. The order only cites 3485, though, correct? That's correct. The order does not cite 3418 or Spinelli. So the argument from the other side is that this is an improper post hoc rationalization of that order. It isn't, Your Honor, and here's why. The cases that they cite for that improper post hoc rationalization don't say that. Department of Central Management Services and Motor Vehicle both dealt with situations where the agency offered nothing. They offered no explanation of the facts. They offered no explanation of the circumstances. And then on appeal, the lawyers trying to defend the agency came up with a brand new explanation. That's very different than what happened here. And in Department of Central Management Services, the court, the Fourth District, sent the case back so that the agency could articulate a basis. The court in Central Management Services did not hold that the agency action was per se improper. However, the court said we need a record on this. We have a record here. That October 24th decision explains the facts and circumstances and explains how it is that the board got to a suspension. To be sure, it doesn't cite Spinelli and it does not cite 3418. That's for sure. However, the facts and circumstances are there. And when this Court reviews an agency decision, this Court is not bound by the agency's specific explanation for what it is that it did, and this Court is not — this Court looks at it as a de novo question of law. What is the scope of the board's authority? The board had authority here to suspend, and they had authority to issue it on a time-served basis. The time-served piece makes sense because it lets everyone move on faster. Otherwise, a teacher would have to go through an entire new proceeding that would involve essentially all of the same kinds of stuff in whatever format was required to justify a suspension, and then would end up in the exact same net position. Why not do it all in the same order? Lake County says that's proper, and there isn't anything unfair about it happening here. The teacher gets reinstated with full back pay with a deduction. It's an offset. The statute, by the way, anticipates offsets, because 85A7 says that the reinstatement with back pay is less mitigation and offsets. And it does not identify an exhaustive list of what an offset could be. Your Honors, in this situation, an offset could clearly include a lesser included or a lesser rather, a lesser suspension of 90 days. Your Honor. You answered Justice Garment, I believe, saying it's not necessary to charge 3418. Yes. Is it permissible? It would be strange if you did. And here's why, Judge. Because the hearing officer doesn't have a role in 3418. The hearing officer doesn't decide under 35. The hearing officer is appointed under 3485, and they're making a recommendation on the findings, and they're making a recommendation of what the remedy ought to be, whether it's dismissal or not, under 3485. There isn't a role for a hearing officer. It would be permissible. I don't think there's anything wrong with it on its face. It isn't required, and it would be odd if it did happen in the charging document. Your Honor, the you know, let's talk for a moment about what that must, that must language means when it talks about, when 3485 talks about reinstating the teacher with back pay. That is, the reinstate the teacher with back pay to make them whole for any lost earnings during the pre-hearing suspension. That section in which it appears talks about how a school board, pending dismissal charges, may suspend a teacher for the interim. At the end, the hearing, the school board reinstates for lost earnings. In other words, the pre-hearing suspension does not cost the teacher earnings. We took care of that here. We reinstated with back pay, and then after that imposed the suspension as an offset. The fact that the teacher was suspended during the pendency of the 3485 proceeding did not cost the teacher any earnings. Rather, the 90-day suspension occurred as a separate remedy under a separate enumerated power, implied power, for the school board. Your Honors, there's nothing unfair about what happened here. The 90-day suspension was proportional. The record seems to reflect that, and there isn't an argument to the contrary. In this, in circumstances like this, school boards need to be able to ensure student safety. They have an important charge. And in order to do that, school boards need flexibility, and they need the ability to respond where the evidence and the facts takes them. The all-or-nothing approach suggested by the appellate court is not consistent with the statute, and it's not consistent with this court's precedents. For these reasons, if there are any other questions, I'm happy to discuss. But for these reasons, we believe that this Court should reverse the appellate court's decision, send the case back so that the October 24th decision can be reinstated. Thank you, Your Honors. Mr. Block? Good morning. May it please the Court, Robert Block on behalf of Appellee Daphne Moore. Ms. Moore's alleged misconduct and alleged grounds for dismissal are not at issue in this case. After reading the hearing officer's recommendation on dismissal, the Chicago Board of Education admitted its error in seeking dismissal. It reversed itself and declined to dismiss Ms. Moore. So the only issue here before this Court is the school board's statutory obligation for its decision under Section 3485A2 to suspend Ms. Moore without pay while it sought her dismissal. Illinois School Code Article 34 governs the Chicago Public Schools, and Section 3485 governs dismissal of tenured teachers. The school board may only act within the powers that are conferred to it by the legislature, and the statute is clear. Upon initiating dismissal proceedings, if the school board chooses to suspend a teacher without pay and ultimately does not dismiss that teacher, the teacher must be made whole for the suspension. If the legislature had intended to allow the school board another option, to do less than make whole, it would have said so in the legislation. Counsel, if we agree with you, do we need to overrule Spinelli? No, Your Honor. You do not. Spinelli, a 1987 decision, recognized a school board's right to suspend, recognized the school board's derivative right to impose suspensions incident to the school board's power to enforce its work rules. That right is not derived from the right to discharge, but it is derived instead from the right to enforce the authority to enforce its rules and regulation. In Spinelli, this Court found that right arose under Section 10-20 of the school code, which applies outside of Chicago. The board relies on the equivalent Article 34 provision, 3418, giving it authority to general management authority over the school district. But 3418 has a critical qualifying language within it, that the school board may only exercise these powers, quote, not inconsistent with the other provisions of this article or provisions of this code which apply to all school districts. In other words, it cannot exercise this derivative power under 3418 to suspend if it's inconsistent with other provisions in Article 34 applying to the Chicago schools or other provisions of the school code generally that apply to all school districts. That qualifier is important because after the Spinelli decision, the school code was amended, and those amendments were very significant in 2011, and they created a new right of suspension under Section 3485A2. When Spinelli was decided, the code did not address suspensions. There was no right of suspension in the code. This Court found a derivative right under the general managerial authority of the school system. So the Spinelli court did not consider a code provision directly addressing suspensions, but one exists today. And the board, the school board is seeking to apply the derivative right under its general authority to manage the schools to override now an express right under Section 3485A2, which allows it both to suspend teachers, but requires that they be made whole if the teacher is not ultimately dismissed. Are you saying that in the original charging effort, the school board could or could not list both sections? Well, it does have a right to suspend, a derivative right to suspend under its general managerial authority. It did not proceed under that. It did not suspend Ms. Moore under its general suspension authority. It suspended Ms. Moore very specifically under 3485, which controls dismissal of teachers. It went down that road, and as this Court's prior questions indicated, it stayed down this road the entire time. It never claimed at the time it retroactively imposed a suspension on Ms. Moore that it was exercising that authority under 3418 as general managerial authority. It was acting solely under 3485, which controls dismissals. Is suspension on the termination continuum? Well, I hesitate because under the school code, that right of suspension exists. While it's not part of this case, the Chicago Public Schools and the Chicago Teachers Union have negotiated a labor contract, and in that labor contract, they have provided that disciplinary suspensions are not allowed. The parties mutually agreed that disciplinary suspensions were counterproductive to remove a teacher from the school for conduct that doesn't justify termination. And so under the labor contract, the teacher is issued a final warning in lieu of suspension as the penultimate disciplinary step before termination. So while the school code itself does not prevent the board from issuing suspensions as part of its managerial authority, the labor contract does bear on that. But what the school board is attempting to do in this case is they are attempting to exercise both rights simultaneously. Counsel for the school board says it has the right to exercise both rights simultaneously. The problem here is that the exercise of one right undermines the clear second right. And while it asserts that it can make this more whole, as the law requires it to do, under 3485A2, it also claims, well, we'll also exercise a separate right to retroactively convert that to a suspension. It's simply not possible to do both at the same time. Subsection A2 is very clear. The teacher must be made whole. You cannot make a teacher whole under 3485A2 and take a part of that whole away at the same time. It just can't be done. Those are inconsistent, and the suggestion that they can do both at the same time is, frankly, sophistry. By the way, the counsel asserted that the setoff provisions in 3485A7 can somehow be twisted to provide for a disciplinary suspension. But the school code is very clear as to what the setoffs can be on the make whole order. In subsection A7, it provides that the setoffs can include offsets for interim earnings and failure to mitigate losses. That means a failure to seek other employment during the term of the suspension. It makes absolutely no allowance for setoffs for separate disciplinary purposes. Again, if the legislature, when it amended the code, had intended to allow the school board, when it exercises that right under A2 to suspend without pay, if the legislature had intended to allow the legislature to provide other offsets, it would have provided it. It would have said so. And it didn't. It's very clear language that when the school board goes down the path of 3485 to dismiss a teacher, it can, but it's not required to suspend that teacher without pay. But the school board had other options here. It didn't have to suspend Miss Moore without pay. It could have, for example, it could have chosen to issue her a warning resolution, which, in fact, the school board ultimately did in this case. It could have elected to suspend her with pay. Or it could have elected to simply not suspend her while it pursued dismissal proceedings. It is not stuck with a binary choice, as the school board suggests. Really, what the school board comes to this court claiming, because it has no legal right, 3485A2 is crystal clear as to what the obligations on the school board are. It really comes with an equitable argument. And it's arguing hardship. It argues that it somehow has less rights to suspend teachers under 3485 than the code would otherwise allow. But, of course, this court in Spinelli said that the right to suspend is not derived from the right to terminate. The right to suspend is derived elsewhere from the general managerial authority. But it complains to this court that it faces an all-or-nothing choice when it seeks to terminate a teacher. Really, what its argument ultimately boils down to is its own error in seeking termination should not be held against it. That it must be allowed to retroactively, at the end of the dismissal process, start all over again and decide to impose a suspension. But, again, the board had choices how it would proceed in this matter. It could have issued a warning resolution. It could have avoided the suspension. Or it could have suspended with pay. The board is asking the tenured teacher to pay for its error in seeking dismissal and, in effect, requires the teacher to defend herself twice. Under the board's interpretation of the law, the teacher must defend herself through a full dismissal hearing in the first instance. When the board goes back and decides, oh, we're going to convert that to a suspension, then she has to defend herself again for separate action on suspension. But the amendments that were placed into the code in 2011 by the school board, in the 2011 amendments, the Illinois school code was substantially revised. It was revised chiefly regarding evaluation of teachers and dismissal of teachers. It was the 2011 amendments that created A2 as it exists today, 3485A2. And that amendment balanced the rights of teachers and the school board. It was a balancing act that was done by the legislature because the right to suspend was a brand-new right created in 2011, an express right to suspend, which didn't exist before. Ginsburg. Yes. I have a question on election of remedies. It seems that the board would have to decide how to proceed based on the remedy without actually hearing the facts through a hearing. I'm sorry. I don't follow, Justice Breyer. Well, if they decide to proceed under their general management decision for suspension before they hear all the facts, or they have to proceed under the section that's addressing us right now based on a termination, but they haven't heard all the facts, so you're saying that they have to proceed on the election of the remedy before they hear the facts. I just wonder if you could help me understand that. The purpose of the dismissal proceeding is to determine whether facts exist. You are correct that there would be no hearing if the board simply issued a suspension. Again, the school board contract, the school board has agreed with the union that suspensions should not be used, and the labor contract provides alternative forms of discipline. But it does not, it's the school board's decision to suspend without pay before it knows the facts. That's what it's doing under 3485A2. It is simply saying this charge is so serious that this teacher must be removed from the classroom and denied any pay while we go about the process of determining the facts in this case and determining whether the charges are true and whether they warrant termination. It doesn't have, in this situation, it doesn't have to suspend a teacher. It has many options to handle that situation. Now, how does it decide if it wants to simply suspend a teacher? Again, the school board has negotiated that right away with the union, but because based on the decision, the mutual decisions, that suspensions aren't appropriate. But if the school board, under the school code alone, the school board could conduct its own investigation and it could issue its own discipline, just as it does on other matters, other lesser forms of disciplines. It issues warning letters to teachers all the time. Those don't require a full hearing. They simply act. Now, the teacher has a right to challenge all those lesser forms of discipline through the collective bargaining process, through the party's agreement on resolving them. But this is, what the board is doing here is it is suspending the teacher before the facts are known, before the case has been litigated, before the hearing officer has weighed in on what the facts show. It is ultimately the board's decision what to do. But the legislature clearly saw it in this situation where the board seeks termination to balance the rights of the teacher and balance the right with the school board. And it expressly created the right that didn't expressly exist before, that when the board is seeking termination before the hearing, before the adjudication, before determining whether the teacher actually committed that conduct and whether it justifies termination, it can suspend the teacher while this matter is proceeding. That's a new right created in the Act. But if it does so, the teacher must be made whole if in the end the board acknowledges its error and acknowledges that termination was not appropriate. The board comes before this Court, you know, asking, what can I do when the conduct is wrong but not enough for termination, as though it has no choices? But ultimately, all of these decisions are the school board's. The board decides whether to terminate or not. The board simply has to show more care in making its decision whether to seek termination versus dismissal and whether it's going to, during that process, suspend the teacher without pay. If the board is allowed, as it seeks to do here, to go through the entire process seeking dismissal and then just substitute at the end, go back and say, oh, we're going to call that a suspension instead, there is no check on the board pursuing termination in every charged infraction and suspending the teacher without pay, forcing the teacher through a full dismissal hearing process, and then at the end of the process going back and saying, oh, change your mind, it's a suspension, that's not the process that the legislature has established. It is not a fair balance that the legislature established in 2011 between the rights of the tenured teacher and the rights of the school board. As this Court was previously questioning, the appellate court found, and properly so, that the school board had engaged in improper ad hoc decision-making. It claims before this Court now that it is asserting the derivative suspension power under Section 3418, its general managerial authority, but that is a post hoc rationalization for the actions which it admittedly took solely under 3485, the dismissal proceedings. Now, counsel for the school board says they had no choice, this was a Section 3485 proceeding. Well, if they have the general power to act under Section 3418, they could have done it at any time, too. They could have exercised that power then. Now, again, there are other reasons why it can't do that, because 3418, its derivative suspension power, is subject to Article 34 and the requirements in dismissal cases. But the board acted solely under 3485 at the time it brought the case, considered the hearing officer's decision, wrote its own decision, and imposed its own suspension. It was clearly brought under Section 3485. And aside from the legal infirmities of trying to act under 3418, and, you know, due to its restrictions, the board's pivot to 3418 before this Court is an ad hoc justification for the actions that it took. As the appellate court found, it is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself, citing the decision of the Central Management Services, the ILRB, and the U.S. Supreme Court decision in Motor Vehicle Manufacturers Association. So aside from the fact that it had 3418 does not confer a right to undermine the requirements of 3485, it also had no right to, after the fact, provide a post-hoc justification to this Court. Thank you. Thank you, Mr. Block. Mr. Doyle? Your Honors, we heard just now about a labor agreement. It isn't in the briefs. It wasn't in the appellate court. It wasn't argued. We don't have it on this record. I'm not able to respond in detail about what that labor agreement provision does or doesn't provide to shed light on this case. It really is not part of this appeal. Separately, Your Honor, we also heard that Spinelli is separate from the right to dismiss under 3485. Spinelli plainly says that on the face of it. In other words, Your Honor, 3485 does not limit the Board's ability to suspend. The two are separate powers that the Board holds. He mentions along the way that the Board could have suspended at any time. That's correct. The Board could have suspended at any time, including at the end. The Board has the inherent power to suspend under Spinelli. That marches alongside 3485. My colleague mentions the 2011 amendments that he says limit the offsets under Section A-7. Section A-7 does not contain an exhaustive limit of what the offsets might be. And we can think of innumerable situations that could be an offset that would be entirely proper that no one would have an issue with that are not included there. Separately, Your Honor, he mentions that the provision says not inconsistent with other provisions. Your Honor, the dismissal procedures are not inconsistent with the suspension procedures because they're separate. In addition, 3485 is not inconsistent with the notion of a suspension because 3485 mentions offsets. There is a way to reconcile. And under this Court's precedent, if there is a way to reconcile two statutory provisions, this Court should take it. And, Your Honor, there is a way that makes sense here of what it is that happened. Separately, Your Honor, Your Honors, my colleague says that this is sophistry to say that we are exercising two powers at the same time. The flip side of that, Your Honor, is that we would be looking at having to start an entire additional proceeding. There is no sense in that. If we had the ability to suspend at any time, why not do it all in the same order and let everyone move on? Justice gets done simply and directly in a way that doesn't prejudice anyone, because the board could have started a suspension proceeding at the very end of the dismissal proceeding and drug everyone through that. It doesn't make any sense to say yes. Your opponent argues that your under your theory that the teacher is not made whole. There has to be a way for the teacher to be made whole. Can you explain how that works under your theory? Yes. Made whole for lost earnings. Made whole as against what? Made whole as against the pre-hearing suspension, which is where that language appears, costing the teacher money. In other words, the fact that the teacher was suspended during the pendency of the dismissal proceeding did not cost her any money. Instead, what cost her money is the suspension that the board imposed. She was made whole when she got a back pay award, and then we had a deduction on top of that. The made whole relates to the pre-hearing suspension provision where that language appears under Article 3485 in the school code. It is not make her whole entirely. If it were, we wouldn't have an ability to impose a warning resolution or remediation steps as a condition of further employment. In this case, there is no question the board has the power to suspend. The only question is whether the board may impose that suspension on a retroactive, time-served basis as part of the same order. Justice suggests that the board ought to be able to pursue its mandate. That mandate is to guarantee student safety. The student safety issues here are not in dispute, and they're important. Separately, let me mention briefly the ad hoc suggestion that this is somehow unfair to articulate a basis now. That October 24th decision articulated the basis for the board's decision to suspend Ms. Moore. It articulated it in some depth, and it articulated it in the context of, Here's why we're not dismissing, because a suspension makes more sense. There is no showing up for the first time on appeal and offering an explanation, and that was the problem in the Central Management Services case. That was the problem in the motor vehicle case in the U.S. Supreme Court. Your Honors, there was nothing improper about the way the board imposed a suspension here, and boards need flexibility in order to respond to facts and circumstances as they develop. Accordingly, Your Honor, we are asking you, all of you, to reverse the Illinois Appellate Court and send the case back so that the October 24th decision can be reinstated in full. Thank you. Thank you, Mr. Doyle. Case number two, number 125785, Board of Education, City of Chicago, versus Daphne Moore is taken under advisement as agenda number two. Mr. Doyle and Mr. Block, thank you very much for your arguments this morning.